**Danny BERLINSKY, Plaintiff,**

v.

**ALCATEL ALSTHOM COMPAGNIE GÉNÉRALE D' ELECTRICITÉ a/k/a Alcatel Alsthom, Defendant**

No. 94 Civ. 9088(CBM).

United States District Court,
S.D. New York.

July 28, 1997.

## MEMORANDUM OPINION

MOTLEY, Senior District Judge.

Counsel for the plaintiff in this previously settled matter seeks an award of $2,420,000 as attorney's fees and expenses in connection with his representation of the plaintiff class. For the reasons provided below, this court, using the familiar lodestar method of analysis, awards counsel $1,141,133.35 in attorney's fees and $168,223.71 in costs.

## BACKGROUND

The underlying facts of this dispute are set forth in this court's previous decision approving a settlement between the parties and familiarity therewith is assumed. *See Berlinsky v. Alcatel Alsthom,* 964 F.Supp. 754 (S.D.N.Y.1997).

On September 26, 1996, the parties informed the court at a pretrial conference that they had reached a settlement and that pa-

pers to this effect would be sent to the court shortly. The proposed settlement essentially required the defendants to pay $8.8 million to a fund out of which the class members would be compensated. In addition, 27.5% of the funds were to be given to plaintiffs counsel as attorney's fees. By order dated January 10, 1997, the court approved the settlement agreement preliminarily and ordered (1) that a settlement hearing be held on April 11, 1997, at which time all class members could voice their objections to the settlement, and (2) that reasonable notice be given to all class members regarding the terms of the settlement so that they could have an opportunity to make objections at the hearing or opt out of the settlement altogether. Though no appearances were made at the settlement hearing, one written objection was made as to the amount of the attorneys fees sought. Given this objection and given that the $2.4 million sought as attorney's fees seemed rather high, plaintiff was directed to submit his time records to the court so that the court could better determine the appropriate amount of fees to be awarded.

## DISCUSSION

### I. Common Fund Doctrine

The common or equitable fund doctrine, upon which plaintiffs counsel relies in making his application for fees, "allows an attorney whose actions have conferred a benefit upon a given group or class of litigants [to] file a claim for reasonable compensation for his efforts." *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir.1977) (*"Grinnell II"*). In reviewing the propriety of the attorneys fees granted in any particular case, "[t]he critical inquiry ... is whether the work performed resulted in a benefit to the class." *In re Agent Orange Product Liability Litigation,* 818 F.2d 226, 237 (2d Cir.1987).

### II. Method of Determining Fees

Courts in this circuit have calculated the fees to be awarded in common fund cases using two different methods: the lodestar method and the percentage of fund approach. *Compare In re Metropolitan Life Derivative*

*Litigation,* 935 F.Supp. 286 (S.D.N.Y.1996) and *In re Boesky Securities Litigation,* 888 F.Supp. 551 (S.D.N.Y.1995) (applying lodestar approach) *with Chatelain v. Prudential–Bache Securities, Inc.,* 805 F.Supp. 209, 215 (S.D.N.Y.1992) *and In re Crazy Eddie Securities Litigation,* 824 F.Supp. 320, 327 (E.D.N.Y.1993)(applying percentage of fund approach). Under the lodestar approach, first articulated by the Third Circuit in the case of *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) and adopted by the Second Circuit in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974) (*"Grinnell I"*) a court calculates counsel's "lodestar" by multiplying the number of hours counsel reasonably expended in the case by the prevailing rates for the services provided. *Id.* at 470–71. If the district court feels it is warranted, it may then apply a multiplier to account for other, less objective factors such as contingent risk, the magnitude and complexity of the litigation, exceptional results, and extraordinary work. *Agent Orange,* 818 F.2d at 234; *Grinnell I,* 495 F.2d at 470–71; *Boesky,* 888 F.Supp. at 562; *In re Ames Dept. Stores, Inc. Debenture Lit.,* 835 F.Supp. 147, 150 (S.D.N.Y. 1993).

However, the lodestar approach has recently come under heavy criticism from a number of sources. First of all, the Supreme Court has indicated in dicta in a case involving attorney's fees recovered under a federal fee-shifting statute that "under the 'common fund doctrine'... a reasonable attorney's fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984).

In addition, a task force convened by the Third Circuit issued a report asserting that the lodestar approach overtaxed the judicial system, created an illusory sense of mathematical precision, and was easily manipulated by judges applying it. *See Court Awarded Attorney Fees: Report of the Third Circuit Task Force,* 108 F.R.D. 237, 246–49 (1985). This sentiment has been repeated by this court on numerous occasions as well. *See, e.g..Cosgrove v. Sullivan,* 759 F.Supp. 166,

168 (S.D.N.Y.1991); *Brown v. Steinberg,* 1990 WL 161023 (S.D.N.Y.) (Motley, J.); *In re Union Carbide Consumer Products Bus. Sec. Lit.,* 724 F.Supp. 160 (S.D.N.Y.1989).

Finally, at least one prominent commentator has also argued that the percentage of recovery method, unlike the lodestar approach, best aligns the interests of the class and its counsel. John Coffee, *Understanding the Plaintiffs Attorney: The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions,* 86 COLUM. L. REV. 669, 724–25 (1986).

As was indicated *supra,* this widespread displeasure with the lodestar method of computing attorney's fees has led to the adoption by various courts of the "percentage of recovery" method of compensation, wherein counsel is compensated at a particular percentage of the amount recovered. Plaintiff's counsel urge that this method be adopted and have suggested a compensation rate of 27.5% of the settlement total of $8.8 million dollars. However, while the percentage of recovery method may have much to recommend it and while the defects of the lodestar method are apparent, this court is without authority to do away with the lodestar system absent a clear indication from the Second Circuit that this approach is no longer to be used. The court is mindful that the Supreme Court has *in dicta* hinted that the percentage of recovery method may be applied, but this is not enough to contravene the clear holding of the Second Circuit in *Grinnell I,* where a fee award was struck down on the grounds that it "displayed too much reliance on the contingent fee syndrome." *Grinnell I,* 495 F.2d at 468. *See also id.* at 470 ("the starting point of every fee award ... *must* be a calculation of the attorney's services in terms of the time he has expended on the case.").

Thus, the court will apply the lodestar method in this case.

## III. Attorney's Fee Award

### A. Counsel's Lodestar

The plaintiff class is represented by two different law firms in this matter. Each firm

has submitted an affidavit relating to their respective lodestars.

■ One of these firms, Weiss & Yourman, claims that it spent 1,028.75 hours on this matter. 707.50 of these hours were spent by a senior partner, Joseph H. Weiss, 220.25 hours were spent by Moshe Balsam, a senior associate, and 101 hours were spent by Mark D. Smilow, a junior associate. The affidavit of Joseph Weiss relating to attorney's fees includes contemporaneous time records detailing how each member of the firm spent these hours. (Weiss Aff. p. 3). At the hourly billing rates claimed for Mr. Weiss, Mr. Balsam and Mr. Smilow of $495, $365, and $225, respectively, Weiss & Yourman assert that their lodestar is $453,332.75.

A similar analysis is undertaken in a separate affidavit filed by Jules Brody on behalf of the other firm representing plaintiff, Stull, Stull & Brody. (Brody Aff. p. 3). Stull, Stull & Brody claim that four attorneys and one paralegal spent a total of 843.5 hours on the case. 660.5 of these were expended by a senior partner who claimed an hourly billing rate of $495, 108.5 were spent by a paralegal whose hourly rate was claimed to be $150, and the remainder of the time was divided between three associates whose billing rates varied between $250 and $295. Using these figures, Stull, Stull & Brody claim that their lodestar is $361,762.50.

The court has thoroughly examined the time records and finds that the amount of time claimed for each attorney and the paralegal is reasonable. Moreover, the hourly billing rates do indeed correspond to the "rate normally charged for similar work by attorneys of like skill in the area," as required by Second Circuit precedent. *Grinnell II*, 560 F.2d at 1098. Thus, the total of $815,095.25 appears to be a reasonable lodestar.

### B. Multiplier to be Attached to Attorney's Fees Award

Seeking to make their lodestar award identical to the 27.5% percentage of recovery

award which they originally sought, counsel urge the court to apply a multiplier of 2.97 when using lodestar analysis.

■ There is nothing in this case which justifies the use of such a large multiplier, particularly when the use of multipliers has become increasingly disfavored. The Second Circuit has made clear that in the event that the lodestar figure is sufficient to compensate counsel, a multiplier need not be used. *Grinnell II*, 560 F.2d at 1099. As a result, their use has been called into question by courts in this Circuit on more than one occasion. *See, e.g., Boesky*, 888 F.Supp. at 564 n. 6; *In re Bolar Pharmaceutical Co., Inc. Sec. Lit.*, 800 F.Supp. 1091, 1096 n. 7 (E.D.N.Y. 1992). Moreover, the Supreme Court has discouraged and in some cases altogether prohibited the use of multipliers in cases involving mandatory fee-shifting under various federal statutes. *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–49 (holding that the special skill and experience of counsel, the quality of representation and the results obtained from the litigation cannot serve as independent bases for increasing the basic fee award); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (same); *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (holding that risk is not an appropriate basis upon which to enhance an award) [1].

As a result, a number of courts in this Circuit have refused to enhance the attorney's fee award with any multiplier. *See, e.g., Trief v. Dun & Bradstreet Corp.*, 840 F.Supp. 277, 283–85; *Maywalt v. Parker & Parsley Petroleum*, 864 F.Supp. 1422, 1437 (S.D.N.Y.1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995). The majority of those courts in which multipliers have been used have not employed a multiplier as high as 2.97. *See, e.g., In re McDonnell Douglas Equipment Sec. Lit.*, 842 F.Supp. 733 (S.D.N.Y.1994) (applying a multiplier of 1.44); *Steinberg*, 1990 WL at *2 (applying a multiplier of 1.13); *Union Carbide*, 724 F.Supp. at 170 (using a multiplier of 2.3 for some counsel and 1.5 for other

1. It is important to note that these cases are dicta in that they involve attorney's fees in mandatory fee-shifting cases, not common fund cases. As the Second Circuit noted in *Agent*

*Orange*, "equitable fund cases may afford courts more leeway in enhancing the lodestar, given the absence of any legislative directive." *Agent Orange*, 818 F.Supp. at 234 n. 2.

counsel). *But see Rabin v. Concord Assets Group, Inc.,* 1991 WL 275757 (S.D.N.Y.) (using a multiplier of 4.4).

 Given this backdrop, it should come as no surprise that the court declines to apply a multiplier of 2.97. The court does hold, however, that counsel is entitled to a more modest multiplier on the basis of risk contingency as well as the complexity of the litigation. At first blush, this case does not seem exceedingly complex or risky, since no motions of any sort were ever filed, discovery was informal, and the case was effectively settled in about two years. However, there was one complicating factor which is important: defendant is a foreign corporation. As the court indicated in its April 28, 1997 opinion, this increased the risk contingency, since defendant may have been able to argue lack of personal jurisdiction. Moreover, a judgment rendered against it by this court may have been difficult to enforce. Finally, though discovery, because it was conducted on an informal basis throughout most of this litigation, was not burdensome, had any formal discovery requests been necessary, counsel would have been forced to spend considerably more time and effort procuring the information it needed from a foreign source.

In light of all of these factors, and employing its sound discretion, the court rules that a multiplier of 1.4 would be most appropriate. Thus, plaintiffs attorney's fees are enhanced to a total of $1,141,133.35, with Weiss & Yourman collecting $634,665.85 and Stull, Stull & Brody collecting $506,467.50.

## IV. Expenses

Both of the firms representing plaintiff also seek the reimbursement of expenses. Weiss & Yourman claims that it has spent $155,035.81 in expenses. In an affidavit filed by Joseph H. Weiss on behalf of that firm on this issue, each of the expenses is listed. (Weiss Aff. ¶ 4). The other firm, Stull, Stull, and Brody, has likewise listed its claimed expenses of $13,187.90 in an affidavit submitted by Jules A. Brody. (Brody Aff. ¶ 4). In light of the substantial costs which were associated with notifying class members about the settlement, which constituted a significant part of these expenses, the court finds the expenses of $168,223.71 to be reasonable and awards them in full.

## CONCLUSION

For the foregoing reasons this court awards the firm of Weiss & Yourman $634,665.85 in attorney's fees and $155,035.81 in expenses. The firm of Stull, Stull, and Brody is awarded $506.467.50 in attorney's fees and $13,187.90 in expenses.

## ORDER

For the reasons set forth in the Memorandum Opinion filed simultaneously herewith, it is hereby:

ORDERED, that the firm of Weiss & Yourman be awarded $634,665.85 in attorney's fees and $155,035.81 in expenses; and it is further

ORDERED, that the firm of Stull, Stull, & Brody be awarded $506,467.50 in attorney's fees and $13,187.90 in expenses.

SO ORDERED.